## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FELICIANA G. REYES<br>7840 Woodman Avenue, Apt. 224<br>Panorama City, CA 91402<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT<br>OF EDUCATION<br>400 Maryland Avenue, SW<br>Washington, DC 20202<br><br>Defendant. | No. 1:17-cv-2548 |

## COMPLAINT

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq., seeking the release of withheld records about the Filipino Veterans Equity Compensation Fund ("FVECF") Interagency Working Group ("IWG") and that relate to the report U.S. ARMY RECOGNITION PROGRAM OF PHILIPPINE GUERRILLAS ("Army Report"), dated *circa* 1949.

2. The White House Initiative on Asian Americans and Pacific Islanders ("WHIAAPI") was established with its funding and administrative support provided by the United States Department of Education ("ED"). WHIAAPI, in collaboration with the Office of Management and Budget, launched the FVECF IWG that made the Army Report publicly available.

3. Feliciana G. Reyes ("Ms. Reyes"), ninety years old, served in a recognized guerrilla force in the Philippines during World War II, i.e., one under a commander who

- 1 -

was appointed, designated or recognized by General Douglas MacArthur, the Commander-in-Chief of the Southwest Pacific Area ("CINCSWPA"). But the Army Report reveals that *all women*—like Ms. Reyes—*were denied recognition* for their guerrilla service except "nurses." Consequently, although Ms. Reyes was a "ward attendant" in a medical corp, she has been denied the FVECF benefit because Army refuses to certify her service.

4. The Army Report is a key piece of evidence relied upon by Ms. Reyes in her pending appeal before the United States Court of Appeals for Veterans Claims ("CAVC") concerning denial of the FVECF benefit. The United States Department of Veterans Affairs ("VA") has moved to strike the Army Report from the appeal and argued that it was "neither actually nor constructively before the [Board of Veterans' Appeals] at the time of its decision" denying Ms. Reyes the FVECF benefit.

5. Ms. Reyes seek declaratory, injunctive, and other appropriate relief with respect to ED's unlawful withholdings of records requested under FOIA.

## JURISDICTION AND VENUE

6. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). In addition, this Court has jurisdiction pursuant to the APA, 5 U.S.C. §§ 701-706. This Court has jurisdiction to grant declaratory and further necessary or proper relief pursuant to 28 U.S.C. §§ 2201-2202 and Federal Rules of Civil Procedure 57 and 65.

7. Venue lies in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because the defendant is located in the District of Columbia and a substantial part of the events or omissions giving rise to the claims occurred in this district.

**THE PARTIES**

8. Plaintiff Feliciana G. Reyes is an individual residing at 7840 Woodman Avenue, Apt. 224, Panorama City, CA 91402.

9. Defendant United States Department of Education is a federal agency located at 400 Maryland Avenue, SW, Washington, DC 20202. ED has possession, custody, and control over the records sought by plaintiff. ED is an agency within the meaning of 5 U.S.C. § 552(f)(1).

**NATURE OF THE ACTION**

10. Just prior to the turn of the twentieth century, the United States acquired the Philippines from Spain when the so-called Treaty of Paris was ratified to end the Spanish-American War. *See* "Treaty of Peace between the United States of America and the Kingdom of Spain," in Foreign Treaties and International Agreements; Spain, 30 Stat. 1754 (Dec. 10, 1898). The Commonwealth of the Philippines was subsequently established in 1934 when Congress enacted the Philippine Independence Act, which in part provided that until "final and complete withdrawal of the sovereignty of the United States . . . [t]he Philippine Islands recognize[d] the right of the United States . . . to maintain . . . armed forces in the Philippines, and, upon order of the President, to call into the service of such armed forces all military forces organized by the Philippine government." 48 Stat. 456 (Mar. 24, 1934).

11. During World War II, President Franklin D. Roosevelt "call[ed] and order[ed] into the service of the armed forces of the United States for the period of the existing emergency and place[d] under the command of a General Officer, United States Army . . . all of the organized military [except naval] forces of the Government of the Commonwealth of the Philippines." Military Order of July 26, 1941, 6 Fed. Reg. 3825 (Aug. 1, 1941).

12. Pursuant to that Military Order, the U.S. Army Forces in the Far East ("USAFFE") was created on July 26, 1941 with Major General Douglas MacArthur in command. Gen. MacArthur subsequently became CINCSWPA, a military command of the Allied forces in a theatre that included the Philippines.

13. To oppose the Japanese invaders, Filipinos created a resistance movement and became known as "guerrillas." Their service was so critical to the Allied efforts—especially during the reconquest of the Philippines from Japan—that their leaders exercised authority under direct command of Gen. MacArthur.

14. On October 28, 1944, Philippine President Osmeña issued Executive Order No. 21 designating "[a]ll persons . . . who are actively serving in recognized military forces in the Philippines . . . to be on active service in the Philippine Army." *See* Executive Order No. 21 by the President of the Philippines (Oct. 28, 1944), *available at* https://www.gov.ph/documents/20147/190423/Executive+Order+No.+21%2C+s.+1944/08f96938-5878-f9ee-f8a8-41e0ca566adf?version=1.1. A "recognized military force" was defined as "a force under a commander who ha[d] been appointed, designated or

recognized by [CINCSWPA]." *Id.* In other words, all guerrilla units recognized by CINCSWPA were also incorporated into the Philippine Army.

15. During 1944-45, Ms. Reyes was a civilian guerrilla and served as a Ward Attendant in the Medical Corp of the 75th Infantry Regiment, with operations in the 7th Military District of the Philippines encompassing Negros Island, specifically in the southeast part known as Negros Oriental. This military force was specifically "recognized" by Gen. MacArthur. The 7th Military District—including its guerrilla force—later was placed under the operational control of the Eighth Army.

16. As a Ward Attendant, Ms. Reyes assisted the Army doctors and nurses by treating wounds and attending the sick soldiers. A person serving as a ward attendant had a role that was distinct from, and subservient to, a nurse.

17. With WWII having come to a close and the United States imminently relinquishing its sovereignty over the Philippines, President Harry S. Truman issued a Military Order, effective June 30, 1946, in which he "release[d] from the service of the armed forces of the United States all of the organized military forces of the Government of the Commonwealth of the Philippines called and ordered into the service of the armed forces of the United States pursuant to the Military Order of July 26, 1941." Military Order filed July 1, 1946, 11 Fed. Reg. 7394 (July 3, 1946); *see also* "Treaty between the United States of America and the Philippines and protocol respecting general relations," in Foreign Treaties and International Agreements; Philippines, 61 Stat. 1174 (July 4, 1946).

18. The Army Report describes "the guerrilla resistance movement in the Philippines and the mission of the United States Army to award those valiant members of this fraternity who contributed materially to the defeat of the common foe, official guerrilla recognition. This recognition is tantamount to induction into the Philippine Army which during the late war was in the service of the Armed Forces of the United States, thus establishing their entitlement to soldier emoluments and veterans benefits." *See* **Exhibit 1** at Foreward.

19. According to the Army Report, recognition of guerrillas "was constantly hindered [] [] by chaotic conditions incident to a total war . . . Under the most favorable reception the granting of guerrilla recognition to deserving Filipinos would have been extremely difficult to accomplish and hold the degree of error and injustice to an absolute nuance." *Id.* at 214. But, quite simply, "it was impossible to exclude error in recognitions." *Id.* at 215. Claims for 7th MD guerrilla recognition were complicated in part by "chaotic personnel problems experienced by an army undergoing the process of rapid demobilization" and in part because original rosters of Eighth Army guerrillas, which had been submitted to GHQ SWPA, were "destroyed" or "lost in storage." *Id.* at Foreward, 108-09.

20. As it turned out, guerrilla "recognition" by the U.S. Army had very limited practical meaning. Congress infamously passed two Rescission Acts in 1946 (Public Laws 79–301 and 79–391) that essentially rendered the Filipinos ineligible for United States veterans' benefits.

21. However, over sixty years later, the FVECF benefit was established by Congress in the Recovery Act, Pub. L. No. 111-5, § 1002, 123 Stat. 115, 200 (2009), with the potential to temper the long-standing sentiment among many Philippine veterans that their efforts on behalf of the United States were unappreciated. Non-U.S. citizens and U.S. citizens who are "eligible" as defined in the Act are entitled to one-time payments of $9,000 and $15,000, respectively. *Id.* at § 1002(e). An "eligible person" is defined, *inter alia*, as "any person who . . . served . . . before July 1, 1946, in the organized military forces of the Government of the Commonwealth of the Philippines, while such forces were in the service of the Armed Forces of the United States pursuant to the military order of the President dated July 26, 1941, including among such military forces organized guerrilla forces under commanders appointed, designated, or subsequently recognized by [CINCSWPA]." *Id.* at § 1002(d)(1)(A).

22. Ms. Reyes applied to the Department of Veterans Affairs ("VA") to receive the FVECF benefit almost eight years ago, in February 2010. VA has denied her eligibility, on the basis that Army refuses to certify that she performed "recognized" guerrilla service. Specifically, Ms. Reyes' name has not been found on Army's reconstructed recognized guerrilla roster. Yet, Army did find in its records a copy of a sworn Affidavit *from 1946*, signed by both Ms. Reyes *and an officer of the Army of the United States*, setting forth Ms. Reyes' guerrilla and USAFFE service. Neither VA nor Army currently acknowledge the import of that Affidavit.

23. Ms. Reyes is not alone. In fact, VA has *denied* 23,775 FVECF claims (56%) while approving only 18,980 claims (44%). *See WWII Filipino Veterans Equity*

*Compensation (FVEC) Fund, Center for Minority Veterans (CMV)*, available at https://www.va.gov/centerforminorityveterans/fvec.asp (last reviewed Nov. 27, 2017) (statistics as of Oct. 1, 2017).

24. Many Filipino veterans have believed that their FVECF claims were improperly denied by VA. In 2012,

> [t]o address their concerns, the White House Initiative on Asian Americans and Pacific Islanders, in collaboration with the Office of Management and Budget, [] launched an Interagency Working Group [("IWG")] comprised of officials from the Department of Veterans Affairs, the Department of Defense, and the National Archives and Record Administration. The Interagency Working Group [was] tasked with analyzing the process faced by these Filipino veterans in demonstrating eligibility for compensation in order to ensure that all applications receive thorough and fair review. This [was] part of the Obama Administration's ongoing efforts to honor the contributions of all veterans in their service to our country.

*See* https://obamawhitehouse.archives.gov/blog/2012/10/17/honoring-filipino-world-war-ii-veterans-their-service.

25. "Through the work of the [IWG], the National Archives and Record Administration [] released [the Army Report] that details the creation of the official Department of the Army Filipino Guerilla list. It was declassified in 1988 . . . The report is available [at https://catalog.archives.gov/id/6921767]." *See* https://sites.ed.gov/aapi/filipino-world-war-ii-veterans/.

26. The Army Report was previously classified as Secret. According to its cover, only 25 copies of the Army Report were created. Despite being "declassified in 1988," it was not readily available to the public. Only a single copy is known to exist,

found decades after it was declassified having been locked away in a safe at the National Archives and Records Administration.

27. "This document details the creation by the U.S. Army in 1948 of the official Guerilla list that is being used to verify valid service for the FVEC. This [was] the first time that this ***invaluable historical document*** [became] available to the general public." *Id.* (emphasis added).

28. The Army Report reveals, in matter-of-fact fashion, why Ms. Reyes' name is not listed on the reconstructed recognized guerrilla roster:

> [T]he close scrutiny given the functions of women guerrillas ultimately led to the belief that, [] ***excepting nurses, no women should be recognized***. However, the unfamiliarity of American personnel with the spelling of female names in Spanish and in native dialect permitted the recognition of [only] a small number of women."

*See* **Exhibit 1** at 106 (emphasis added).[1] Indeed, "a tightening up of requirements for guerrilla recognitions" included "[t]he close scrutiny of the service of women guerrillas." *Id.* at 113-14.

29. Ms. Reyes is presently arguing in an appeal before the U.S. Court of Appeals for Veterans Claims ("CAVC") that the denial of the FVECF benefit to her, in part, violates the equal protection component of the Due Process Clause of the Fifth Amendment by intentionally discriminating against Filipino women who served as guerrillas. *See Reyes v. Shulkin*, Vet. App. No. 16-2471 (CAVC). An equal protection violation arises because men's names were included on guerrilla rosters whereas

---

[1] The Army Report is reproduced in relevant part in Exhibit 1, but can be found in its entirety at https://catalog.archives.gov/id/6921767.

women's names were intentionally excluded, so men are able to more readily prove entitlement to the FVECF benefit than women.

30. Pursuant to Executive Order 13515 (Oct. 14, 2009), the White House Initiative on Asian Americans and Pacific Islanders ("WHIAAPI") was established with its funding and administrative support provided by ED. *See, e.g.,* https://obamawhitehouse.archives.gov/the-press-office/executive-order-asian-american-and-pacific-islander-community. WHIAAPI, in collaboration with the Office of Management and Budget, launched the IWG that made the Army Report publicly available. The IWG was comprised of officials from VA, the Department of Defense, and the National Archives and Record Administration.

31. Despite VA's participation on the IWG, VA has argued in the CAVC appeal—in which Ms. Reyes relies on the Army Report—that the document "purports to have been prepared by the Philippines Command of the U.S. Army in 1949" and is "unverified as to its authenticity." *See* **Exhibit 2** at 16. VA also has argued in the CAVC appeal that the Army Report was "neither actually nor constructively before the [Board of Veterans' Appeals] at the time of its decision." *See* **Exhibit 3** at 4.

32. Discovery is not available in connection with veterans' benefits claims, which are administratively handled by the VA and appeals of which are adjudicated based upon the administrative record (the so-called "Record Before the Agency" or "RBA").

33. Details about the IWG are difficult to locate. Meeting minutes, for example, are not readily available to the public. Yet details concerning the IWG's work

in releasing the Army Report to the public are important to Ms. Reyes in her pending CAVC appeal. They also are important to the tens of thousands of other FVECF claimants who have been denied eligibility for this benefit by the VA.

34. The public is owed full and frank disclosure by ED concerning the work of the IWG with respect to the Army Report.

### PLAINTIFF'S FOIA REQUEST AND DEFENDANT'S FAILURE TO COMPLY WITH FOIA

35. By email dated March 22, 2017, Ms. Reyes submitted a FOIA request ("FOIA Request") to ED requesting:

> all Records in the possession, custody, or control of the **Department of Education** and/or the **White House Initiative on Asian Americans and Pacific Islanders** that **both (1)** concern the **Filipino Veterans Equity Compensation Fund (FVEC or FVECF) Interagency Working Group (IWG) and (2)** reference, refer to, or relate to the report **U.S. Army Recognition Program of Philippine Guerrillas**, dated *circa* 1949.
>
> * * *
>
> As used herein, the term "Records" includes but is not limited to meeting minutes of the IWG, memoranda involving the IWG, reports of the IWG, and instructions of the IWG. The term Records does not include an actual copy of the above-identified report.

*See* **Exhibit 4** (emphasis in original).

36. The FOIA Request identified individuals at ED who may provide information helpful to ED's FOIA officials in identifying relevant Records, including Diana Yu (Diana.yu@ed.gov) and Akil Vohra (akil.vohra@ed.gov).[2] *Id.*

37. The FOIA Request sought expedited processing:

> **Expedited Processing** is hereby requested. . . . Ms. Feliciana Reyes[] is involved in legal proceedings concerning the Filipino Veterans Equity Compensation Fund (the subject matter of the IWG) in which she has an **urgent need for the requested Records**. Ms. Reyes will potentially suffer the loss of substantial due process rights if this FOIA request is not processed on an expedited basis. Moreover, the subject matter related to the FOIA request—benefits for Filipinos who served in WWII—has met widespread and exceptional media interest and the information sought involves possible questions about the government's integrity that affect public confidence. The news media has widely reported issues with veterans being found ineligible for this benefit and Congress has held hearings on the subject. In addition, the records concern the government's knowledge of the 1949 report and its importance with respect to the Filipino Veterans Equity Compensation Fund. The government recently questioned the "authenticity" of this report. These statements are true and correct to the best of the knowledge and belief of the undersigned.

*Id.* (emphasis in original).

38. By email and letter dated March 25, 2017, ED acknowledged receipt of the FOIA Request and assigned it tracking No. 17-01296-F. *See* **Exhibit 5**.

---

[2] Other individuals previously at WHIAAPI/ED whose email accounts, on information and belief, may contain responsive Records include but are not limited to Jude R. Soundar (Jude.Soundar@ed.gov), Jason Tengco (Jason.Tengco@ed.gov), Phillip Olaya (Phillip.Olaya@ed.gov), Kiran Ahuja (formerly Executive Director of WHIAAPI), Audrey Buehring, (formerly Deputy Director of WHIAAPI), and Chris Lu (formerly Co-Chair of WHIAAPI). Various Records involving these individuals were either produced by ED in response to an administrative appeal, discussed *supra*, or were produced in co-pending FOIA litigation, *Reyes v. United States National Archives and Records Administration*, No. 17-1497 (CKK) (D.D.C.).

39. By email dated April 4, 2017, Ms. Reyes "appeal[ed] the constructive denial of expedited processing under FOIA." *See* **Exhibit 6**.

40. By email dated April 10, 2017, ED stated that its "FOIA Service Center received responsive documents to process and the final response should be sent out today." *See* **Exhibit 7**.

41. By email dated April 11, 2017 (with an attached letter dated April 1, 2017), ED provided a "final response" stating "the documents that you are requesting cannot be released" and that "[t]hey are totally withheld." *See* **Exhibit 8**.

42. By email dated April 12, 2017, Ms. Reyes informed ED that her administrative appeal concerning the denial of expedited processing was "moot" but that "she would file "a new administrative appeal shortly because of the denial of information in the 4/11/2017 response determination." *See* **Exhibit 9**.

43. By email dated April 21, 2017, Ms. Reyes appealed the denial of information requested under FOIA. Her administrative appeal states, *inter alia*:

> The Response fails to meet the most basic requirement of ED under FOIA – the department must first "gather and review the documents" that would be responsive and then "determine and communicate the scope of the documents it intends to produce and withhold." *See, e.g., Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013). The Response does not indicate that any documents were actually gathered and reviewed. Moreover, the Response fails to indicate the number of pages or the number of documents that are being withheld. The Response therefore is deficient for these reasons.
>
> Requester provided ED with a likely time frame for responsive records (2012-2013) and likely custodians of responsive records (Diana Yu; Akil Vohra; and/or Rebecca Lee). Records should have been gathered and reviewed from

> at least those three document custodians with respect to the requested time frame.
>
> In addition, ED failed to produce any segregable, non-exempt information, such as portions of the withheld documents that are factual or non-deliberative in nature. Responsive but withheld documents such as emails surely contain factual information that is non-deliberative in nature such as the sender, recipient(s), date, and subject of an email. A mere mention of, or reference to, the report U.S. Army Recognition Program of Philippine Guerrillas, dated *circa* 1949, in such an email also would be non-deliberative (see the FOIA Request for the relevance of this document with respect to the FOIA Request).

*See* **Exhibit 10**.

44. By email and letter dated June 13, 2017, ED informed Ms. Reyes that it "decided to grant [her] appeal in part and deny [her] appeal in part." *See* **Exhibit 11**. Four pages were released in part and withheld in part, while three pages were withheld in full. *Id.* ED stated that if Ms. Reyes was dissatisfied with the FOIA response, she could thereafter file a lawsuit. *Id.*

45. In co-pending FOIA litigation—*Reyes v. United States National Archives and Records Administration ("NARA")*, No. 17-1497 (CKK) (D.D.C.)—also concerning the Army Report (and involving a FOIA request of substantially the same scope as the disputed request to ED), NARA has identified over 150 pages of responsive records. Many of those pages include emails involving individuals at WHIAAPI/ED, yet none were identified by ED through its purported search. For example, emails involving WHIAAPI/ED officials in October 2012 concerned the IWG meetings, "[d]ue outs," and "topics." Emails between Jude R. Soundar, a Policy Advisor at WHIAAPI/ED, and NARA in May 2013 discussed the Army Report. And emails involving WHIAAPI/ED

officials during June-July 2013 concerned a so-called "Filipino Vets Blog Post and Report" that was vetted by WHIAAPI/ED and that discussed the Army Report. It is now clear that ED did not properly "gather and review the documents" responsive to Ms. Reyes' FOIA request, as she administratively appealed.

46. ED has not made responsive, non-exempt records promptly available to Ms. Reyes in connection with the FOIA Request.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

47. Ms. Reyes has exhausted any and all administrative remedies with respect to ED in connection with her FOIA Request.

## FIRST CAUSE OF ACTION:
### Unlawful Failure to Disclose Agency Records
### With Respect to the FOIA Request

48. Ms. Reyes repeats and re-alleges paragraphs 1-47 above.

49. Ms. Reyes has a legal right under FOIA to obtain the agency records requested from defendant ED in the FOIA Request, and no legal basis exists for defendant's failure to make available the requested records.

50. With respect to the FOIA Request, defendant ED's (i) failure to exercise due diligence with respect to searching for responsive records and making the requested records promptly available and (ii) wrongful withholding of agency records are unlawful, and in violation of FOIA, including 5 U.S.C. § 552(a)(3), as well as ED's regulations promulgated under FOIA.

51. Ms. Reyes is entitled to declaratory and injunctive relief with respect to the release and disclosure of the requested records.

## SECOND CAUSE OF ACTION:
**Violation of the Administrative Procedure Act for Failure to Conduct Proper Search and Wrongful Withholding of Records With Respect to the FOIA Request**

52. Ms. Reyes repeats and re-alleges paragraphs 1-51 above.

53. Defendant ED's (i) failure to exercise due diligence with respect to searching for responsive records and making the requested records promptly available and (ii) wrongful withholding of agency records each constitute agency action unlawfully withheld and unreasonably delayed, in violation of the APA, 5 U.S.C. §§ 701-06. ED's failure to properly search, and its withholdings, each are arbitrary, capricious, an abuse of discretion, not in accordance with law and without observance of procedure required by law, all in violation of the APA.

54. Ms. Reyes is entitled to declaratory and injunctive relief with respect to the release and disclosure of the requested records in connection with the FOIA Request.

## REQUESTS FOR RELIEF

WHEREFORE, Ms. Reyes requests that judgment be entered in her favor and against defendant, and that:

a) defendant and any of defendant's agents or other persons, offices, or components acting for, with, by, through or under them be ordered to promptly conduct an expedited and reasonable search for records responsive to Ms. Reyes' request under FOIA;

b) defendant and any of defendant's agents or other persons, offices, or components acting for, with, by, through or under them be enjoined and restrained from continuing to fail to conduct a proper search and from

withholding records relevant to Ms. Reyes' request under FOIA and in violation of the APA;

c) the Court declare that the requested records are not exempt from disclosure under FOIA and order defendant to disclose the requested records in their entireties and make copies available to Ms. Reyes;

d) the Court enter a judgment awarding Ms. Reyes reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E) and 28 U.S.C. § 2412; and

e) the Court award all other such relief to Ms. Reyes as this Court deems just, proper and equitable.

Dated: November 27, 2017    Respectfully submitted,

/s/ Seth A. Watkins
Seth A. Watkins (D.C. Bar # 467470)
    Email: watkins@wlapllc.com
WATKINS LAW & ADVOCACY, PLLC
1455 Pennsylvania Avenue NW, Suite 400
Washington, DC 20004
Telephone: (202) 355-9421
Facsimile: (202) 355-9424

Louis S. Mastriani (D.C. Bar # 386820)
    Email: mastriani@adduci.com
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1133 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 467-6300
Facsimile: (202) 466-2006

*Attorneys for Feliciana G. Reyes*